Cause No. _____  **959·15**

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS
### AT AUSTIN

ORIGINAL

ON APPEAL FROM
THE COURT OF APPEALS
TWELFTH JUDICIAL DISTRICT
TYLER, TEXAS
12-13-00374-CR

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

JOHNNY PAUL SUTHERLIN
APPELLANT, pro se
v.
STATE OF TEXAS
APPELLEE

FILED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

FROM THE 3rd JUDICIAL DISTRICT COURT
ANDERSON COUNTY, TEXAS
NO. 31228

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
(* precedent in matter, oral arguement requested)

Johnny Paul Sutherlin, pro se
and laymen in Law
TDCJ NO. 1889698
Bill Clements Unit
9601 Spur 591
Amarillo, Texas 79107-9606

(i)

# TABLE OF CONTENTS ii

COVERSHEET    i

IDENTITY OF PARTIES And COUNSEL    iii

INDEX OF AUTHORITIES    iv

PROCEDURAL STATEMENT OF THE CASE
(CHRONOLOGY)    V

STATEMEN OF FACTS    1

POINT OF REVIEW    1

    Reasons for Review    1
    Relevant Facts    2
    A Clear Record    4
    Comparable Cases    6
    Analysis    7

PRAYER    8

CERTIFICATE OF SERVICE    9

# IDENTITIES OF PARTIES

APPELLANT — Johnny Paul Sutherlin

DEFENSE COUNSEL AT TRIAL — Hon. Wm. M. House Jr.
TCB#10045000
800 North Church
P.O. Box 1486
Palestine, Texas 75801

APPELLANT'S ATTORNEY ON APPEAL — Hon. Wm. M. House Jr
TCB# 10045000
800 North Church
Palestine, Texas 75801

STATE'S ATTORNEY AT TRIAL — Hon. Elizabeth Watkins
TBC# 90001980
and
Hon. Scott Holden
TBC# 24036795
Asst. Dist. Attornies
Anderson County CourtHouse
500 NorthChurch, Room 38
Palestine, Texas 75801

STATE'S ATTORNEY APPEAL — Hon. Scott Holden
TBC# 24036795
Asst. Dist. Attorney
Anderson County Courthouse
500 NorthChurch, Room 38
Palestine, Texas 75801

Presiding Trial Judge — Hon. Pamela Foster-Fletcher
Anderson County Courthouse
Palestine, Texas 75801

(iii)

# INDEX OF AUTHORITIES

Page

Statutes:

| | |
|---|---|
| U.S. Const. amend VI | 1,7 |
| Tex. Const. art I & 10 | 1,7 |
| Tex. Rule App Proc. 66.3(b) | 1,8 |
| Tex. Rule App Poc. 66.3(d) | 1,8 |
| Code Crim. Pro. art. 35.16(C) 2 | 5 |
| Tex. Rule App Pro. rule 2 | 8 |

Cases:

| | |
|---|---|
| Cardenas v. State 305 S.W. 773,776 (Tex.Crim App 2009) | 6 |
| Newbury v. State 135 S.W.3d 22,23 (Tex Crim App 2002) | 6 |
| Tucker v. State 183 S.W. 3rd 501,511 (Tex.App Ft Worth 2005) | 6 |
| Curry v. State 910 S.W.2d 490,493 (Tex.Crim App 1995) | 6 |
| Mathis v. State 67 S.W.3d 918,924 (Tex.Crim.App 2002) | 6 |
| King v. State 29 S.W.3rd 556,558 (Tex.Crim. App 2000) | 6 |
| Bauder v. State 921 S.W.2d 696,698 (Tex.Crim.App.1996) | 6 |
| Hernandez v. State 805 S.W.2d.409,413 (Tex.Crim.App 1990) | 6 |
| Grado v. State 445 S.W.3d 736,737 (Tex.Crim.App 2014) | 7 |
| Barcias v. State 93 S.W.3d 36,38 (Tex.Crim.App.2002) | 7 |
| Standefer v. State 59 S.W.177,179 (Tex.Crim. App 2001) | 7 |
| Atkins v. State 951 S.W.2d 787,789 (Tex.Crim. App 1997) | 7 |

Definitions:

| | |
|---|---|
| taint    (Blacks Law Dictionary) | 1,2 |

# PROCEDURAL STATEMENT OF THE CASE
## (CASE CHRONOLOGY)

| | |
|---|---|
| CHARGE | 4 Counts Aggrivated Sexual Assault with a Deadly Weapon, 1 Count of Aggrivated Kidnapping |
| PLEA | Not Guilty (RR III 11.5-.15) |
| Voir Dire | October 8, 2013 (RR II ) |
| TRIAL BY JURY | October 9, 10, 2013 (RR III-IV) |
| VERDICT | Guilty all 5 counts (RR IV 108.11-1102) |
| VERDICT ON PUNISHMENT | Oct. 11, 2013 Life on all 5 Counts (RR V 23.11-24.23) |
| JUDGEMENT AND SENTENCE | Oct 11, 2013 Life on all 5 Counts (RR V 25.6-.21) |
| NOTICE OF APPEAL | Oct. 11, 2013 (RR V 27.4-.22) |
| AFFIRMED | June 24, 2015 |
| PDR DUE | September 22, 2015 |

# STATEMENT OF FACTS

The Appellant was charged with, 4 counts aggrivated sexual assault, and 1 count of aggrivated Kidnapping. All counts with, a deadly weapon to wit; a box cutter. Plea not guilty (RRIII.5-.15) The Trial Court allowed indictment to be read in its entirety to the venire panel. The trial court, upon personally interviewing all venirepersons from defense attorney's [individual challange for causes] makes two statements in trial court's discretion, (RRII 95.3-5) "But after you told them the particulars of the indictment, you tainted the whole entire panel." and the trial court in its discretion says, (RRII 112.21-22) "You tainted my panel by reading the indictment". (RR Vol.2 063.3 - 064.25) is the reading of indictment to the entire venire panel who made up the 12 jurors. Defendant found guilty on all 5 counts and sentenced to life imprisonment on each count.

Taint v.t. To imbue with a noxious quality or principle. 2 To contaminate or corrupt. 3. To tinge or affect slightly for the worse. (Blacks Law Dictionary)

## POINT FOR REVIEW

The Court of Appeals erred in ruling the trial court did not a-buse its discretion in refusing to allow defendant's attorney to conduct an adequate voir dire of the venire panel concerning the range of punishment after trial court allowed defense attorney to read the indictment in it's entirety with it's facts and partic-ulars.

## Reasons for Review

The Court of Appeals has misapplied case law in its Memorandum Opinion and the Texas Court of Criminal Appeals needs to set a Standard of Review for such cases as this precedent matter that denies Appellatte "a public trial by an impartial jury" as stated in the 6th U.S.C.A, and Tex. Const. art I § 10. under Reasons for Granting Review T.R.A.P. rule 66.3 (b) and (d). for the following:

1. Trial Court's abuse of discretion allowing Defense Attorney

(1)

to read the 5 count indictment in entirety then being denied to ask commitment questions on range of punishment if found guilty of that indictment and;

**2.** Court of Appeal two damning omissions of it's Memorandum Opinion: a) denies by omission Appellants brief states, "The Court made other comments." Well I know but after you told them the particulars of the indictment, you tainted the whole entire panel." (RRII 95.3-.5) and "You tainted my panel by reading the indictment. (RRII 112.21-.22) and, b) The omission of count 5 of the indictment that was read to the venire panel. Both show a clear abuse of discretion by the trial court for taking no curative measures for an impartial trial gauranteed by our State and Federal Constitution.

## Relevant Facts

What took place in the Voirdire of the venire panel seating the petite jury; (The tainting of a jury) emphasis added.
The Court; "Okay. The indictment alledges that Mr. Sutherlin has committed 4 counts of aggrivated sexual assault and 1 count of aggrivated kidnapping. (RRII.18.9-11) "The law says that for you to be able to sit on a jury before you hear anyhing. You have to decide whether you are open to the full range of punishment." (RR2.6-.8) "Okay. So my question is before you know the actual facts in this case because of the name of the crime, are you open minded to the low punishment all the way up to the high punishment, and you will wait and hear --" (RRII 29.8-.12) Mr. House, defense attorney, "The indictment goes like this:...." (RRII 63.3-64.25) reads entire indictment adding facts and particulars not needed for a challenge for cause. The following facts are stated in the indictment; The weapon, a box cutter; 4 seperate counts of sexual assaut occured; the victim's anus in one count and sexual organ in another count was penetrated with an unknown object. This leaves entire venire panel with facts of indictment with no details, using only their individual graphic imagery without rebuttal of a defense.

Additionally, count 5 of indictment is read leaving again facts and open ended images. By omission the Appellate Court

(2)

leaves out the damning piece of the indictment the venire-panel hears. (See o2 of Appellate Court's Memorandum Opinion for this blatant omission).

"Count V. Furthermore, the defendant Johnny Paul Sutherlin, with intent to commit another felony, like sexual assault, retaliation, murder, or to facilitate the flight after committing one of those, acts did inflict Bodily injury on the victim, or violate or abuse the victim sexually, or terrorize the victim, and during this, intentionally or knowingly abducted the victim, by restricting the victims movements, without her consent, so as to substantially interfere with her liberty, by moving her to one place or another, or confining her with the intent to prevent her liberation, or by secreting her in a place she is not likely to be found." (RRII 64.14-.25)

The whole venirepanel knows the exact reading of the indictment. All the indictments fact and particulars. The only commitment question that is proper in the punishment itself for any challenge for cause would now pertain to that indictment. The elephant is in the room. The venire panel knows. **No hypothetical for similarities** can be used the indictment with its facts are known.

Defense Attorney: "If an individual has been found guilty of this offense." (RRII 68.15-.16)

The Trial Court: "You can't ask if they find him guilty of what you read in the indictment whether they would be able to give five years or not" "Not to the indictment language: You cannot ask that question." (RRII 68.19-22; 69.2-3) "The law does not allow you to say, Okay with these read out this is what I can do or not do. That is not appropriate." (RRII 78.20-.22)

The Court: "But after you told them the particulars of the indictment, you tainted the whole entire panel." Defense Attorney: "I disagree." The Court: "You asked them -- you were trying to get them to commit to what they could or could not do based on what the indictment said so I disagree with you." conversation from (RRII 95.3-95.7) and again The Trial Court says: "You tainted my panel by reading the indictment." (RRII 112.21-.23)

In the trial court's own discretion the court state's two times the

(3)

Knowing of the venirepanel being corrupted. In the Trial Court's words tainted. But at no time were corrective measures taken for the venirepanel by the Court creating a bias in the panel. "The whole entire panel" (RRII 95.5) as said by the Court.

## A Clear Record

The entire 5 count indictment read to venirepanel, in trial courts allowance (RRII 63.3-65.1). The Court asks State it's challenge for cause. The State challenges thirty-one venirepersons for cause. Trial Court grants all without any voir dire or questioning for challenge. (RRII 66.25-72.23) The Defense challenges twelve persons. The Trial Court questions all twelve. It accepts, grants, six and denies six. Three are on the jury. Mr. David White who became foreman of the jury states, "I would be hard pressed to give him five years." (RRII 81.18-.20). challange overruled.
Other statement's because indictment

1) venireperson #10. "I was open to any range but then the wording of the defendant's attorney" (RRII 74.10-.11). "I tend to lean more towards the higher charges, ..." (RRII 75.3-4) overruled

2) Venireperson #40. "Well, which I heard what the charges were how he read them all... maybe the five years, but those type crimes is more." The Court; "Because of the indictment being read, is that why because you know what the indictment says, what has to be proven?" venireperson #40: "Right you know there's no way I could give five years on it no way. (RRII 78.15-79.23)

3) venireperson Chenault #53. The Court: "Four of a sexual nature, one is a kidnapping. Can you consider giving someone 5 yrs. in prison for those type of offenses?" venireperson #53. "Now that you put it that way no, ma'am. (RRII 88.4-.11)

4) venireperson #58 Defense Attorney: "If somebody is guilty of these could you still consider five years" #58 "NO." (RR 93.8-.17)
[Discussion between Court and Defense] The Court: "Well I know, But after you told them the particulars of the indictment, you tainted the whole entire panel." (RRII 95.3-.5)

(4)

5. Venireperson #60 The Court: "If you relate it to what Mr. House read in the indictment, that's different?" Venireperson #60: "Yes, Because if you -- in my opinion, if you relate it to what was read in the indictment, then that implies that everything was proven in all 5 counts and therefore, to me, that's not five years. You see what I'm saying? (RR 96.25-97.6) challenge denied

* (RR 104.11) OFF-the-record discussion. This was the trial court stating she did not want another jury pool because of the reading of the indictment and it tainting the venire panel.

6. Venireperson #43: "I think since I have heard like, all... I don't think I would probly be the best to be on the jury. ...Just by all this and studying his facial expressions and everything, I think my mind would be pretty much made up as it is..." The Court: "So what makes you think you couldn't call it the way you see it?" venireperson: "Probably the charges and--" the Court: "The indictment? venireperson: "Yeah." (RRII 110.12-111.3)
The Court: "You tainted my panel by reading the indictment." (RRII 112.21-;22)
7. Venireperson McMillan #66: "Yes I do. I'm kind of mixed about it. On the one hand, those are some serious crimes, I mean, and I think--" The Court: "Based upon what the indictment was, read from the indictment?" venireperson #66 "Yes." (RRII 114.2-.7)

This show's 7 out of the 12 venirepersons challenged for cause being tainted, bias, prejudiced, in the actual indictment being read. Nine other members that sat on the jury never gave an opinion of how this reading of the indictment may have biased them. The trial court in its discretion stated twice the venire panel tainted. Code Crim. Pro. art 35.16(c) 2 show's a biased or prejudiced juror of applicable law is not to sit on a jury and being open to punishment range is law applicable to this instance. This also will conclude that this jury was tainted, as it was, chosen from a tainted venire panel.

(5)

# Comparable Cases

Cardenas v. Tex. 305 S.W. 773, 776 (Tex. Crim. App 2009) "We review a trial courts ruling on a challange for cause with considerable deference because the trial court is in the best position to evaluate the venire members demeanor and responses" Newbury v. State 135 S.W. 3d 22, 23 (Tex Crim App), 125 S Ct. 496 (2004) Tucker v State 183 S.W. 3d 501, 511 (Ft. Worth 2005) "We reserve a trial court's ruling on a challenge for cause only upon a clear abuse of discretion. Newbury 135 S.W. 3d at 32; Curry v. State 910 S.W. 2d 490, 493 (Tex. Crim. App 1995) Tucker 183 S.W. 3d at 511. In determining whether the trial court abused it's discretion, we review the total voir dire record in context. See Mathis v. State 67 S.W. 3d 918, 924 (Tex. Crim. App 2002) King v. State 29 S.W. 3d 556, 558 (Tex Crim. App. 2000). The trial court in this case goes against it's own discretion, knowing the whole venirepanel now corrupt, soured, tainted, tinged, for the worse.

"Generally, it is presumed that the jury can and will follow a court's curative instruction to disregard. See Bauder v. State 921 S.W. 2d 696, 698 (Tex. Crim. App 1996) But in this case as discussed above the trial court gave no curative instruction. Mistrial is an extreme and exceedingly uncommon remedy that is appropriate only when it is apparent that an event at trial is so emotionally flammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. Id. Whether a particular error calls fore a mistrial depends on the peculiar facts and circumstances of the case. Hernandez v. State 805 S.W. 2d 409, 413 (Tex. Com. App 1990). In this case the summoning of another venirepanel or jury pool would have been the solution.

Any way looked at, the trial court abused its discretion by knowingly admitting the whole venirepanel was tainted by the reading of the indictment and having no corrective instruction or cure. Even if by the following:

a. Allow the commitment question in its indictment language since the indictment was known in it's entirety;

b. Overule indictment reading and have venirepanel disregard or;

c. Reseat, or summons, another, venirepanel, and jury pool.

(6)

Some things are fundamental and the right to a "public trial by an impartial jury." is one gauranteed by the 6th U.S.C.A. and Tex. Const. art I §10, so fundamental to the proper functioning of our adjudicatory process... that they cannot be forfeited... by inaction alone. These are considered absolute rights." Grado v. State 445 S.W. 3d. 736 at 737 (2014 Tex. Crim. App. Lexis 1556).

## Analysis

The Appellate Court based it's Memorandum Opinion of the voir dire commitment question, upon Governing Law that has NO RELEVANCE to, what the trial court allowed to take place, the reading of a 5 count indictment base on an actual set of facts, not a hypothetical. The Appellate Court wrongaly used Barajas v. State 93 S.W.3d. 36,38 (Tex. Crim. App. 2002.) "An attorney cannot attempt to bind or commit a prospected juror to a verdict based on a hypothetical set of facts." see appellate court's memorandum opinion p.3. The Appellate Court then inadequately uses the Standefer v. State, 59 S.W.3d 177,179 (Tex Crim. App. 2001) "and it's test and of how a question goes beyond the statutory elements and statutory manner or means, is improper under Standefer. Id." The trial court allowed the reading of the indictment that adds facts beyond those necessary to challange for cause. The only questions adequate for commitmant now pertain to the indictment language, such as the weapon to wit a box cutter, the 4 counts of aggrivated sexual assault where the victim's anus and sexual organ was penetrated with an unknown object. These acts could have taken place in the reader's or hearer's mind from minutes to days because of the wording of the indictment. At the conclusion of the Appellette Court's memorandum opinion it uses Atkins v. State 951 S.W.2d. 787, 789 (Tex Crim. App 1997) and states, "But when he asked the question based on the language of the indictment, which specifically referenced the use of a box cutter as a deadly weapon he rendered the question improper." (Appellates Court's memorandum opinion) p.5. The indictment was read the venire panel knew

(7)

the deadly weapon was a box cutter. This clearly shows Appellate Courts citing and application of case law improper, upon facts of Appellant's trial and the Trial Courts abuse of discretion as relevant facts show the Trial Court tells the defense _twice_ the venirepanel has been tainted. The Trial Court never attempts to cure the reading of the indictment. Nor does it strike the reading of the indictment and overrule its contents, nor does the trial court tell the jury to disregard the indictment's reading. A clear abuse of discretion The proceedings are corrupt and uncurable as the defendant was prejudiced to having a fair trial and noting the Trial Court admits the jury tainted as it was produced from the _venire-panel_. Further more the Appellate Court omits all of count 5 in it's printing of the indictment and omits where in the Appelant's brief that it is directly stated the trial courts admits twice the venirepanel tainted. This was done to minimize Appellant's brief in his direct appeal. Asking also TRAP rule 2 in effect.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, and in accordance with Tex. Rule App. Proc. 66.3(b) and (d) Appellant prays that this Court reverse the opinion of the Court of Appeals for a new trial, or reverse for further proceedings.

Respectfully submitted,

_Johnny Paul Sutherlin_

Johnny Paul Sutherlin, pro se
and layman of law
T.D.C.J. No. 1889698
Bill Clements Unit
9601 Spur 591
Amarillo, Texas 79107-9606

(8)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct original "Petition for Discretionary review has been placed in the mail box on Bill Clements Unit and is sent first Class Mail via U.S. Postal Mail to The Clerk Of the Court of Criminal Appeals of Texas, P.O. Box 12308, Capitol Station, Austin, Texas 78711 on this Friday, September 18th, 2015 and claim the mail box rule. All the above mentioned is true and correct under penalty of perjury.

September 18th, 2015
Date

John Paul Sutherlin, Prose and layman of law
TDCJ No. 1889698
Bill Clements Unit
9601 Spur 591
Amarillo, Texas 79107-9606

(9)

# NO. 12-13-00374-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHNNY PAUL SUTHERLIN,*<br>*APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Johnny Paul Sutherlin appeals his convictions of four counts of aggravated sexual assault and one count of aggravated kidnapping. In one issue, Appellant argues that the trial court abused its discretion in refusing to allow him to conduct an adequate voir dire of the venire panel concerning the range of punishment. We affirm.

## BACKGROUND

Appellant was charged by indictment with four counts of aggravated sexual assault and one count of aggravated kidnapping. The indictment further alleged that Appellant had two prior felony convictions.

During voir dire proceedings, Appellant read the indictment to the venire panel and, thereafter inquired of the panel members' ability to consider the entire the range of punishment. The following exchange ensued:

[APPELLANT'S COUNSEL]: Now, back to the range of punishment . . . . You have heard me read what we are talking about. We are talking about four counts of rape.

Knowing what the charge is, is there anybody in this panel - - not this case, but can you imagine a case where somebody is charged with this offense and found guilty - - could not consider the minimum of five years?

Let's see. We have got No. 1, 2.

VENIREPERSON: Could you ask that question again, please.

. . . .

[APPELLANT'S COUNSEL]: If an individual were convicted of these offenses, could you imagine a situation where you could consider a minimum of a five-year sentence?

VENIREPERSON: Raise if we can consider?

THE COURT: If you could not consider the minimum, five years.

[APPELLANT'S COUNSEL]: 5, 8, 9, 10, 11, 12, 13, 15, 16.

THE COURT: [Counsel], are you asking them after they find someone guilty, or before they hear any facts, will they consider the full range? Because if you have asked them to already hear the facts - -

[APPELLANT'S COUNSEL]: If an individual had been found guilty of this offense.

THE COURT: Of what you read?[1]

[APPELLANT'S COUNSEL]: Yes.

THE COURT: Or - - you can't ask them to commit to that. You cannot ask, if they find him guilty of what you read in the indictment whether they would be able to give five years or not. You cannot commit them to that. You can ask the question, but you can't ask them that.

[APPELLANT'S COUNSEL]: The question was, can they consider it.

THE COURT: Not to the indictment language; you cannot ask that question.

---

[1] Earlier in the proceedings, Appellant, while reading to the jury from the indictment, stated as follows:

He intentionally or knowingly caused the penetration of the anus of Marilyn Moore (a pseudonym) -- they use pseudonyms in sexual assault so the victim's true identity is not made public in any of the courts -- "by defendant's sexual organ or an object unknown to the grand jury, without the consent of Marilyn Moore (a pseudonym), and the defendant did then and there use[] or exhibit a deadly weapon, to-wit: a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

Count II. Intentionally or knowingly cause the penetration of the sexual organ of Marilyn Moore (a pseudonym) by defendant's sexual organ and/or an object unknown to the grand jury, without the consent of Marilyn Moore (a pseudonym), and the defendant did then and there use a deadly weapon, to-wit: a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

Count III. Intentionally or knowingly cause the penetration of the anus of Marilyn Moore (a pseudonym) by defendant's hand, without the consent of Marilyn Moore (a pseudonym), and the defendant did then or there use a deadly weapon, to-wit: a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

Count IV. Intentionally or knowingly cause the penetration of the sexual organ of Marilyn Moore (a pseudonym) by defendant's hand without the consent of Marilyn Moore (a pseudonym), and defendant did then and there use or exhibit a deadly weapon, to-wit: a box cutter, that in the manner of its use or intended use is capable of causing death or serious bodily injury during the commission of said assault.

[APPELLANT'S COUNSEL]: Okay. Not this specific case, but anybody convicted of a similar offense, those that could not consider five years? Thank you.

Appellant made challenges for cause against venire members 10, 12, 54, 60, and 61 based on their inability to consider the full range of punishment. The trial court denied these challenges. Appellant used preemptory strikes against venire members 10, 54, 60, and 61.

Following voir dire, the jury was empaneled, and Appellant pleaded "not guilty" to the charges. The jury found Appellant "guilty" as charged on each count. Following a trial on punishment at which Appellant pleaded "true" to the enhancement allegations, the jury sentenced him to imprisonment for life for each offense. This appeal followed.

## VOIR DIRE COMMITMENT QUESTION

In his sole issue, Appellant argues that the trial court abused its discretion in refusing to allow him to conduct an adequate voir dire of the venire panel concerning the range of punishment.

### Governing Law

We review the trial court's determination concerning the propriety of a voir dire question for abuse of discretion. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Id.* Often, such questions ask for a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way. *Id.* A commitment question can also be a question that asks a prospective juror to refrain from resolving an issue on the basis of a fact that might be used to resolve the issue. *Id.*

Not all commitment questions are improper. *Id.* at 181. For instance, when the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard. *Id.* But where the law does not require the commitment, a commitment question is invariably improper. See *id.* Thus, for a commitment question to be proper, one of the possible answers to that question must give rise to a valid challenge for cause. *Id.* at 182. Moreover, even if a question meets this challenge for cause

3

requirement, the question nevertheless may be improper if it includes facts in addition to those necessary to establish a challenge for cause. *See id.*

In sum, the inquiry for improper commitment questions has two steps. *See id.* First, is the question a commitment question and, second, does the question include facts—and only those facts—that lead to a valid challenge for cause? *See id.* If the answer to the first question is "yes" and the answer to the second question is "no," then the question is an improper commitment question, and the trial court should not allow it. *See id.* at 182–83.

## Voir Dire Questions Concerning the Range of Punishment

Both parties are entitled to jurors who can consider the entire range of punishment for the particular statutory offense, i.e., from the maximum to the minimum and all points in between. *See Cardenas v.* **State**, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). Jurors must be able to consider both a situation in which the minimum penalty would be appropriate and a situation in which the maximum penalty would be appropriate. *Id.* Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense. *Id.* A question committing a juror to consider the minimum punishment is both proper and permissible. *Id.*

However, counsel veers into impermissible commitment questions when he attempts to commit a venire member to consider the minimum sentence based on specific evidentiary facts. *Id.* For example, a party may ask the potential juror if he could consider the minimum of imprisonment for five years in a murder case. *See id.* But he may not ask if the potential juror could consider that sentence in a case in which the state alleged that the defendant "tortured, garroted, poisoned, and pickled" the victim. *See id.* The nonstatutory manner in which the defendant was alleged to have committed the offense adds evidentiary facts peculiar to the case on trial. *Id.* That question, because it goes beyond the statutory elements and statutory manner or means, is improper under *Standefer. Id.*

Here, Appellant relies on *Cardenas* in support of his argument that his query of the venire panel did not amount to an improper commitment question. In *Cardenas*, the defendant asked the members of the venire panel the following question:

> I want to you to assume that you have found somebody guilty of . . . aggravated sexual assault of a child. They intentionally or knowingly caused the penetration of the sexual organ . . . of the victim, by the means of the sexual organ . . . or with a finger or with touching genital to

4

genital . . . . Could you honestly ever fairly consider on an aggravated sexual assault of a child as little as five years in prison and give probation as an appropriate punishment?

*Id.* at 181. In response more than fifty members of the panel stated that they could not consider the minimum punishment. *See id.* After voir dire, the appellant challenged each of these jurors for cause, but the trial judge denied most of those challenges. *See id.* The court of appeals reversed the trial court, holding the appellant had not asked an improper question. *See id.* The court of criminal appeals agreed, holding that a commitment question may include any or all of the statutory elements and statutory manners and means contained in the indictment, but may not include evidentiary facts or nonstatutory manners and means. *See id.* at 189.

The facts of the instant case are distinguishable from the facts in *Cardenas.* Here, Appellant read the language of the indictment to the members of the venire panel and prefaced his question concerning their ability to consider the minimum sentence based on "what [he] read[,]" to them from the indictment. Thus, Appellant prefaced his question on specific facts of the case and nonstatutory manners and means such as the use of a box cutter in the commission of the offense. *See id.* Appellant could properly have asked if the panel members could consider the minimum punishment when a deadly weapon was used. *See id.* But when he asked the question based on the language of the indictment, which specifically referenced the use of a box cutter as a deadly weapon, he rendered the question improper. *See id.*; *see also Atkins v. State,* 951 S.W.2d 787, 789 (Tex. Crim. App. 1997). Therefore, we hold that the trial court did not abuse its discretion in preventing Appellant from asking an improper commitment question. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered June 24, 2015.
Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.

(DO NOT PUBLISH)

5

Johnny Paul Sutherlin
TDCJ-CID No. 1889698
Clements Unit
9601 Spur 591
Amarillo, Texas 79107-9606

Legal Mail

Clerk Of
Criminal Appeals Of Texas
08
on
as 78711